CRANE *vs.* BUNNELL & BOUTWELL.

The court of chancery has concurrent jurisdiction with courts of law in cases of fraud. And where the complainant files a bill for relief against a fraudulent contract and for a discovery of the fraud, the court may proceed and grant relief, and make a final decree between the parties after such discovery has been obtained.

But the court of chancery will not, in a case of concurrent jurisdiction, grant an injunction for the mere purpose of transferring the jurisdiction from a court of law, where no discovery is necessary, or after the defendant has fully answered the complainant's bill.

Where notes payable in specific articles were given upon an agreement alleged to be fraudulent, *Held* that the maker of the notes was not obliged to come into a court of equity for relief; as the notes were not negotiable, and the maker had a perfect defence at law, to a suit upon the notes in the name of the payee.

THIS case came before the chancellor upon an appeal from a decision of the vice chancellor of the fourth circuit

August 15.

1843.

Crane
v.
Bunnell.

dissolving an injunction.  In 1836, the defendants sold to the complainant ten thousand acres of Texian lands for .the price or sum of $1250 ; for which the latter gave to them his promissory notes payable in building slate, in six annual instalments.  At the time the notes were taken, the defendants executed a written agreement to obtain and deliver to the complainant, within twenty days, scrip of the Rio Grande and Texas Land Company, entitling him to ten thousand acres of land of the said company.  And within the time prescribed they procured and delivered to him a certificate purporting to be signed by Isaac A. Johnson as trustee, and Lemuel Sawyer as secretary of the company, and by J. C. Beals as empresario or founder of the colony or settlement, by which the complainant was declared to be entitled to one share in the estate and funds of the Rio Grande and Texas Land Company, each share of which contained ten thousand acres, besides surplus lands, and which was only transferable on the books of the company. The first note was paid by the complainant ; and the other notes not being paid, suits at law were commenced thereon, against him, to recover the amount of such notes.  The complainant put in a defence to the suit at law upon the notes, and after the cause was at issue and was about to be brought to trial, he filed the bill in this cause and obtained an injunction, restraining the plaintiffs in the suit at law from proceeding therein.  The bill alleged that the defendants Bunnell and Boutwell falsely represented to the complainant that they were the owners in fee of 100,000 acres of Texian lands, and that they gave him an agreement to convey the same to him, by a good and valid conveyance, within twenty days ; but that they afterwards improperly obtained from him the agreement, upon pretence that they were delivering to him a conveyance of the lands according to the terms of such agreement, when in fact they only gave to him the scrip purporting to be signed as above stated. The complainant also alleged, in the bill, that he had no means of proving the terms of the agreement, and the facts stated in the bill, except by the answer of the defendants.

The defendants put in answers to the bill, so far as it prayed a discovery from them, and demurred to the relief, upon the ground that the complainant, if the allegations in the bill were true, had a perfect defence at law in the suit upon the notes. By their answers they denied all the allegations of fraud in the bill, either as to the making of the original agreement and obtaining the notes for slate, or in the obtaining the possession of the agreement upon the delivery of the scrip according to the terms thereof. And they stated, in their answers, that by the terms of that agreement they were only to give to the complainant such scrip, signed by the persons who signed the scrip delivered.

The vice chancellor dissolved the injunction with costs, for the reasons stated at length in the following opinion.

WILLARD, V. C. There is nothing disclosed in the bill which should induce the court to withdraw the decision of the cause from the forum which the parties originally selected, and to which it properly belongs. The discovery sought is merely in aid of the defence interposed to the action on the note ; and it was for that purpose the injunction was allowed. The defendants having put in an answer to the discovery, which has not been excepted to, and from which it appears that the complainant has obtained no discovery, it follows, according to the settled practice of the court, that the injunction must be dissolved, and the parties be left to litigate the matter in a court of law. A different rule would lead to gross abuse. If under a pretence of discovery, any suit could be withdrawn from a common law forum to this court, the court itself would soon become an enormous grievance. (7 *Paige*, 451. 7 *Cranch*, 69. 1 *Story's Eq.* § 71 *to* 74.)

It is contended by the complainant's counsel, that the defendants, by demurring to the relief, are estopped from their motion to dissolve the injunction, until the demurrer is decided in their favor. Whatever may be the rule where the answer to the discovery does not meet the equity of the bill, the position contended for cannot be supported with

1843.

Crane
v.
Bunnell.

reference to a case like this. Even had the defendants de-
murred to the discovery as well as to the relief, they might
have moved to dissolve the injunction on the matter of the
bill. If the bill does not set forth such a case as entitles
the complainant to the relief sought, the injunction should,
of course, be dissolved, and the defendants be permitted to
proceed with their action at law. (7 *Paige*, 157.)

I will examine the case therefore upon the bill alone.
The agreement, as consummated by the parties on the 13th
August, 1836, was, that the defendants should, within
twenty days from that day, procure a good and sufficient
deed of conveyance from the Rio Grande and Texas Land
Company to the complainant, in fee simple, of ten thousand
acres of land situate in the tract of the said company in
Texas ; in consideration of which the complainant was to
make and execute six promissory notes, payable in slate,
at different periods, amounting in the aggregate to $1250.
The bond to convey and the notes were simultaneously
made and delivered on the same 13th August, 1836. The
complainant obtained for his notes precisely such a contract
to convey as he had agreed for, and there is, therefore, no
fraud in the *factum* of the notes. It is not alleged that
the defendants had more knowledge of the existence of the
Rio Grande and Texas Land Company than the com-
plainant. Nor is it alleged that the defendants knew or
had reason to suspect there was no such company, at the
time they entered into the bargain. Both parties in this
stage of the transaction had equal knowledge, or the means
of obtaining it ; and there is no reason to doubt that the
complainant was as eager to make the purchase, as the de-
fendants were to obtain the notes. Had the contract, as
then closed, been carried out according to its terms, and
had the complainant invoked the aid of this court to vacate
it, and to have his notes cancelled, he must have alleged
that there was no such company in being at the time of
the contract, or that a deed of the company to him would
convey no land, and that those facts were known to
the defendants and not known to him. But the bill con-

tains no such averments : and as the contract was after-
wards varied, it is perhaps unnecessary to discuss the rights
of the parties under the assumed hypothesis. Within the
time limited for procuring the deed, the parties again met,
and the defendants, in lieu of the deed, delivered to the
complainant a scrip or certificate dated 18th August, 1836,
purporting on its face to be issued by the Rio Grande and
Texas Land Company, and entitling the complainant to
one share (10,000 acres of land,) in the estate and funds
of the said company, transferable only on the books of
the company, and to be signed by certain officers of the
company. It was an engraved certificate with a map at-
tached, according to the custom and forms of that day.
The complainant received the scrip and surrendered the
bond for a deed to the defendants. It was competent for
the parties to vary their contract, and, of course, for the
complainant to accept stock in the company rather than a
deed, if he chose. He might have received stock in a rail-
road, a bank, or canal company, or the cash. And his re-
ceipt of either, in lieu of the deed, operates, in the absence
of fraud or mistake, as a discharge of the defendants under
the original contract. No mistake is alleged in the bill ;
nor is there any fraud set up with reference to the substi-
tution of the one contract for the other. The hurried man-
ner in which the defendants took up the bond, and expa-
tiated on the goodness of the scrip and the growing pros-
pects of Texas, are not alleged to have been done with a
fraudulent design. The complainant never offered to re-
turn the scrip. Nor is there any evidence in the bill that
he complained of his bargain until about three years after-
wards. Although the complainant has stated in which
hand he received the scrip, he is less particular when he
comes to specify times. Thus he says from the hurried
manner in which the transaction occurred, he was unable
to tell whether the scrip was such an instrument of con-
veyance as was contemplated by the bond ; and that as soon
thereafter as he conveniently could, he made inquiries in
relation to said company and said scrip, and became satis-

fied that it was not a deed, and that he had been imposed upon by the defendants, and so informed them, and requested them to give up the bond. It is to be remarked, that he did require them to give such deed as the bond contemplated ; but his object probably then was to repudiate the contract. It is fair to presume, in the absence of dates in the bill, that all this occurred in 1839, after he had paid one of the notes. It is hardly probable that he would have yielded to the advice of the defendants' counsel, and paid a note obtained from him by fraud, as he now says, if he knew the defendants had palmed upon him an instrument which he did not intend to receive. It would require but a few moments to tell whether the certificate was a deed or something else. The complainant, in 1836, would have been satisfied with a deed from the company to himself. He held the scrip at least three years without objection. The bill is silent as to any suggestion of fraud during that period. From the history of the times, we may well conjecture that he was delighted with the exchange of Hoosic slate for an interest in the Rio Grande and Texas Land Company ; that he was proud of an association with men of such enlarged views and adventurous enterprize ; that his imagination luxuriated in the boundless prospect of wealth and enjoyment in the bland atmosphere of the tropics. No doubt he often examined and pondered over the scrip and the map attached to it. He fancied the land divided into squares, and avenues and streets, adorned with perennial shrubbery and flowers, and covered with magnificent villas. The earth yielding its fruits spontaneously in unstinted abundance, the inhabitants, relieved from the curse of labor and toil, could repose on their sofas, fanned by slaves, and enjoy the contrast between their happy lot and that of the people of New-York. Such were probably the operations of his mind during the three years about which the bill is silent. He, at length, with the rest of the world, awoke from his reverie, and found his El Dorado among the marshes and fens of the Rio Grande, and in the exclusive occupancy of musquitoes, gallinippers and alligators. He then discovered fraud in the contract ; began

1843.

Crane
v.
Bunnell.

to think of not paying the notes; thought of his honest creditors; and in short, told one of the defendants, in the language of the bill, "that he could not and would not pay the notes, that he meant to pay his honest debts, and would make no promise to pay the said notes then or at any future time, for he had received no value for them," &c.

There can be no doubt that the complainant must be deemed to have accepted the scrip in lieu of a deed, and to have taken it at his own risk. His long acquiescence without objection amounted to a substitution of the latter for the former contract. It is not material, therefore, whether the defendants had title to lands in Texas or not, nor whether the company had such lands, since the scrip did not purport to convey any land, but only a share of the estate and funds of the company. Those funds may have amounted to a million of dollars for aught that appears to the contrary in the bill. Nor is it alleged that the scrip was without value at the time it was received. It is merely averred that it was so at the filing of the bill, in March, 1842, nearly six years after the transaction.

It is true the complainant alleges his belief, on information, either that no such company ever existed as the Rio Grande and Texas Land Company, or if it did, that it was formed for the purpose of imposing upon and cheating the public. (*See* 7 *Paige,* 157.) When he was so informed, and by whom, does not appear; and which of the alternatives is to be taken as the truth, if either, is left to conjecture. The complainant was at any rate willing to become a member of the company and partake of its profits, by whatever means they were acquired. It is too late for him now to ask the aid of this court to discharge him from his contract.

That the complainant has failed to realize from the bargain the expectations he had cherished, is probably true. That the stock of the company is valueless, may also be true. But it by no means follows that the complainant is entitled to relief either at law or in equity. In the

changes and vicissitudes of this world, the value of property and the most cherished hopes of human enterprizes are constantly fluctuating.  Fortunes are often made or lost by trusting to appearances, the fallaciousness of which can only be tested by the result.  Each man confides in his own wisdom and sagacity when he makes a bargain. He relies upon the chances of success, which are often brilliant in prospect, and is stimulated to activity by the hopes they inspire.  From the nature of things, all cannot become rich, however much they may make haste to become so.  Time and chance happen to all men.  No reproach should be cast upon either of these parties, from the mere fact that they were influenced by the mania of 1836.  All were in a degree affected by it.  It is not necessary to presume a man a fool or a rogue because he made a bargain which, seen through a different medium, indicates folly.  Both may be honest.  The bill does not disclose enough to taint the final contract with fraud, so as to entitle the complainant to the aid of this court.  The motion to dissolve the injunction must be granted, with fifteen dollars costs.

*D. Wright,* for the appellant.

*J. D. Willard,* for the respondents.

THE CHANCELLOR.  If the allegations in the complainant's bill were true, he had a perfect defence at law in the suit upon the notes.  And as they were not negotiable and could not therefore be transferred to a bona fide purchaser who would acquire any greater interest therein than the payees themselves had, there was no reason for coming into this court except for the purpose of discovery, merely. The defendants in their answer having denied the only allegations in the bill upon which the injunction could possibly be sustained, it was a matter of course to dissolve it upon the coming in of that answer.  It is true, in cases of fraud, this court has concurrent jurisdiction with courts of

1843.

Crane
v.
Bunnell.

law. And where a party comes into this court, in the first instance, to be relieved from a fraudulent contract, especially where a discovery is necessary to establish the fraud, this court having obtained jurisdiction of the cause for one purpose, may proceed and make a final decree therein between the parties, after such discovery has been obtained.

But even in cases of that kind, this court does not grant an injunction for the mere purpose of transferring the jurisdiction from a court of law to this court, after the commencement of a suit there, except to stay the trial in the suit at law until the defendant in this court has fully answered the complainant's bill. In this case, every allegation in the bill charging fraud in the obtaining of the notes, either by misrepresentation or otherwise, and the alleged fraud in obtaining possession of the written agreement afterwards, and which are sworn to be in the knowledge of the complainant only, are fully and unequivocally denied in the answer. If the complainant has any defence to these notes, therefore, it is one which is equally available in the suit at law as in this court. As the only pretence for coming into this court was to obtain a discovery by an answer, on oath, from the defendants, and the complainant having obtained all the aid this court could give him in that respect, the vice chancellor very properly dissolved the injunction, and left him to defend himself as he could before the court of law and a jury.

The belief of the complainant that no such company as the Rio Grande and Texas Land Company ever existed, and that the pretended company had no title to the lands for which the scrip was issued, is not sufficient to sustain the injunction; although the defendants are not able, by their answer, to show that the complainant's belief is contrary to the fact. For if the other part of the answer is true, the complainant himself assumed the risk of the validity as well as of the value of the scrip he contracted to purchase. Whether the persons calling themselves the Rio Grande and Texas Land Company were in fact entitled to a conditional grant of land in Texas, under the coloniza-

tion laws of the congress of Coahuila and Texas authorizing the executive to receive contracts from Mexican empressarios for the settlement of vacant lands, or under the acts of 1834 and 1835, which were declared void by the constitution of Texas, adopted in March, 1836, or whether the company itself was an intended imposition upon both parties in this suit, appears to be a question of no importance in the decision of this appeal; although it may have a bearing upon the defence to the notes in the suit at law, if they were not founded upon any consideration of benefit to the maker or of injury to the payees.

The order appealed from must be affirmed, with costs.